UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NITHSAMOEUN OUCH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of the ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) | Case No. C10-1224-RAJ-BAT <br><br> **REPORT AND RECOMMENDATION** |

Nithsamoeun Ouch, seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends the ALJ erred by (1) failing to fully credit his testimony, (2) finding he can communicate in English without restrictions, and (3) finding at step-five there are jobs he can perform. Dkt. 10 at 2-3.  As discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Mr. Ouch is currently 43 years old, has three years of high school education, and has worked as a delivery driver, fabric cutter, and semi-trailer maintenance person.[1]  On March 29, 2005, he applied for benefits alleging disability as of March 3, 2002.  His application was denied

---

[1] Tr. 116, 451, 453.

REPORT AND RECOMMENDATION- 1

initially and on reconsideration.  The ALJ conducted a hearing on November 28, 2007, finding Mr. Ouch not disabled.  Tr. 19.  As the Appeals Council denied Mr. Ouch's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 5.

## II.     THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

**Step one:**  Mr. Ouch has not worked since March 3, 2002.  Tr. 21.

**Step two:**  Mr. Ouch has the following severe impairments: neck pain, hearing deficiency, slight degenerative changes at C4-5 and C6-7 with circumferential bulge, and moderate foraminal narrowing at C5 root.  *Id*.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:**  Mr. Ouch has the RFC to perform sedentary work as follows:  He can lift or carry up to 10 pounds occasionally. In an eight-hour workday, with normal breaks, he can stand and walk two hours, and sit six hours.  He needs periodic alternate positions.  He can reach frequently.  His hearing deficiency limits him to work settings with normal conversation from three to five feet.  *Id*.

**Step four:**  Mr. Ouch cannot perform his past work.  Tr. 23.

**Step five:**  As there are jobs Mr. Ouch can perform, he is not disabled.  Tr. 24.

## III.     DISCUSSION

**A.     Mr. Ouch's Credibility**

Mr. Ouch contends the ALJ erred in affording his testimony little weight.  Dkt. 10 at 5.[4] The ALJ found Mr. Ouch's testimony "not credible to the extent they are inconsistent with the

---

[2] 20 C.F.R. §§.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[4] In support of the argument, Mr. Ouch also contends the ALJ erred in substituting his opinion of *Mr. Gollyhorn's* physical and mental conditions for the opinions of Mr. Gollyhorn's doctors. Dkt. 10 at 5.  Mr. Ouch also refers to Mr. Gollyhorn's medical conditions to support his argument that he cannot communicate in English.  *Id*. at 8.  The Court will disregard the Gollyhorn arguments as they obviously pertain to a different claimant's case.

REPORT AND RECOMMENDATION- 2

1    residual functional capacity assessment." Tr. 22.  The Court finds the ALJ's assessment of Mr.

2    Ouch's residual functional capacity is consistent with the testimony Mr. Ouch gave.  Hence even

3    if the reasons the ALJ gave were erroneous, the Court finds them harmless and will not disturb

4    the ALJ's findings.

5           In this case, Mr. Ouch testified about his past work in a warehouse, driving forklifts and

6    delivery trucks, and maintaining semi-trucks.  Tr. 456.  The ALJ found Mr. Ouch could not

7    perform his past work which often involved lifting heavy boxes over 20 pounds.  Tr. 23.  In

8    describing his physical condition, Mr. Ouch testified he has constant neck pain and headaches,

9    watches T.V., doesn't do house chores, but has no problem doing the laundry occasionally.  Tr.

10   459-60.  Mr. Ouch also testified he has neck pain, headaches, and memory and concentration

11   problems.  But he did not describe how they affected him, or explain what limits, if any, these

12   conditions caused on his ability to work.

13          Mr. Ouch testified his neck begins to hurt if he has to push or pull "heavy stuff" or "jump

14   around" and that he has hearing problems.  Tr. 460.  He also said he's not sure how long he can

15   sit before pain sets in and needs to "move around" when sitting causes discomfort.  Tr. 462.  He

16   said he has no problem standing.  Tr. 463.  He testified he can lift "light stuff" and estimated he

17   can lift about 8 pounds without trouble.  Tr. 464-65.

18          He also testified he could open and close light things—such as a normal door, or a

19   chair—but would have pain if he had to frequently reach overhead.  Tr. 466-67.  He stated he can

20   frequently reach using his arms as long as it involves "light stuff."  Tr. 468.  He also stated he

21   had problems remembering and staying focused.  When asked to give an example, he stated he

22   misplaces things.  Tr. 469.  In discussing Mr. Ouch's hearing problems, his lawyer agreed Mr.

23   Ouch can hear a normal conversation from 4 to 5 feet away.  Tr. 470-71.

REPORT AND RECOMMENDATION- 3

The ALJ's assessment of Mr. Ouch's residual functional capacity tracks Mr. Ouch's testimony. Consistent with Mr. Ouch's testimony at the hearing, the ALJ found Mr. Ouch cannot perform his past work and was limited to sedentary work. Mr. Ouch said he could lift about 8 pounds and the ALJ similarly limited him to lifting up to 10 pounds occasionally. Mr. Ouch said he had no problems standing and the ALJ limited him to two hours of standing or walking. Although Mr. Ouch was unclear about how long he could sit, the ALJ limited him to six hours of sitting with "periodic alternate positions" to permit Mr. Ouch to relieve any discomfort. Mr. Ouch said he could push and pull and could reach light items frequently. The ALJ also took into account Mr. Ouch's hearing problems and limited him to work settings with normal conversation from three to five feet. Tr. 21-22. Based on this RFC, the vocational expert testified there were jobs that Mr. Ouch could perform. Tr. 476-79.

Mr. Ouch also testified about headaches, neck pain and memory and concentration problems. The ALJ acknowledged Mr. Ouch's neck pain was a serious impairment at step-two. However, the fact Mr. Ouch may have impairments does not mean he is unable to work. His testimony about his neck pain, headaches and memory problems provided virtually no information that would support the conclusion that these problems render him unable to do the jobs the VE testified he could perform. Accordingly, in light of the testimony Mr. Ouch gave, the Court cannot conclude the ALJ erred in ultimately assessing Mr. Ouch's functional limitations and concluding there are jobs he can perform.

**B.     Mr. Ouch's Ability to Communicate in English**

Mr. Ouch contends his testimony at the hearing before the ALJ shows he is "nowhere near proficient in the English Language." Dkt. 10 at 9. As such, he argues the ALJ erred in finding he can communicate in English. The Court disagrees. The transcript of the hearing

REPORT AND RECOMMENDATION- 4

1  shows, Mr. Ouch was asked many questions and answered them all, and that he never indicated

2  he was having problems communicating in, or understanding, English.  Only once did he ask for

3  a question to be restated.  Tr. 458.  He never indicated he did not understand questions posed and

4  often answered at length.  For instance, in describing the day he was injured he stated:

> Yeah, that one day I was working. At the end of the day  I was
> removing the flat tires from-- a couple flat tires from the semitruck
> and then after removing, replaced the tire and everything. So I pick
> it up, put it back on and where I was working at. We don't have the
> machine to replace the tire. We do it by-- we used a hammer and
> pry bars to replace tires.  So I did that for a while and then that one
> day when I tried to replace the tire, when I put the tire back and I
> heard something pop on my neck. Then at the end of the hour of
> the day so I didn't get to tell my supervisor, but I told a guy that
> worked with me. I said, I felt something pop on my neck, so it was
> okay, but-- at that time, but when I went home, it started to get
> increasing pain and my neck starts swelling. And then it was like--
> we got off at like 3 or 4, 5:00 afternoon already, so just go to sleep
> and come back to work in the morning. My neck was swollen. My
> boss asked me what happened and I said, yeah, last night I got hurt
> when I was putting the tire back. And then they sent me to see a
> doctor so I went to see occupational doctor (INAUDIBLE).  Yeah,
> and then so he just gave me some medicine and actually, was
> checking up on me, give me some x-rays and stuff like that and
> give me medication and give me a couple weeks off, whatever.
> The note, you know, to tell the supervisor I cannot work for while.
> So I just went back. After that, I just go back to the company and
> go home.

17  Tr. 457-58.  As noted in this example, at times some words Mr. Ouch used were described as

18  "inaudible."  The Court does not agree with Mr. Ouch's suggestion that Mr. Ouch cannot

19  communicate in English because the transcript of his testimony noted some words as

20  "inaudible."  The use of "inaudible," here, suggests Mr. Ouch spoke quietly, not that he could

21  not understand.  This is consistent with the ALJ's request, at the beginning of the hearing, that

22  Mr. Ouch speak louder, and the fact that some of the ALJ's own words were also inaudible.  TR.

23  447, 453.

REPORT AND RECOMMENDATION- 5

Additionally, neither the ALJ nor Mr. Ouch's lawyer indicated, at the hearing, they could not understand him or that they were concerned Mr. Ouch did not understand English.  Rather, near the beginning of the hearing, Mr. Ouch's lawyer told the ALJ that Mr. Ouch's English was "quite good" when he was attending high school in the United States, got a little worse after he left high school, and that Mr. Ouch feels he has an adequate understanding of English.  Tr. 451-52.  When the ALJ asked counsel:  "The [sic] it would be your opinion that he doesn't really need an interpreter for the proceeding today," counsel answered:  "no he shouldn't."  *Id.* at 452.  Accordingly, the Court will not disturb the ALJ's finding that Mr. Ouch "is able to communicate in English."  Tr. 23.

**C.    The ALJ's Step-Five Assessment**

Mr. Ouch argues the ALJ erred in finding, at step-five, that there are jobs he can perform.  He first argues the ALJ failed "to account" for Mr. Ouch's "difficulties communicating in English."  As discussed above, the record does not support this argument.

Mr. Ouch next argues the ALJ failed to consider "important records from [Mr. Ouch's] labor and industries claim" including Dr. Jones' records.  Dkt. 10 at 11-12.  Mr. Ouch did not present this evidence to the ALJ; thus the ALJ's failure to consider it is not, alone, grounds for reversal.  After the ALJ issued his decision, Mr. Ouch presented the evidence to the Appeals Council.  *See* Tr. 301-444.  As the Appeals Council considered[5] the new evidence, this Court may also to also consider it.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007).

Mr. Ouch made two arguments to the Appeals Council pertaining to the records from his labor and industries claim ("L&I").  First, he argued "according to Dr. Schuster's report [Mr. Ouch] would only be capable of returning to the workforce if retrained."  Tr. 305.  Dr. Schuster's

---

[5] Tr. 5, 8.

REPORT AND RECOMMENDATION- 6

1  medical opinions do not establish Mr. Ouch cannot work at the level determined by the ALJ.

2  Rather, Dr. Schuster found Mr. Ouch could return to work and was not disabled.  He opined:

> The patient is felt capable of returning to the workforce, but he needs vocational retraining.  He is not capable of returning to the work at the time of injury, given the physical descriptions of the job of mechanic as outlined in the medical records provided.  This patient may not lift up to 100 lb under any circumstance.  In terms of alternative work, the patient needs to cooperate with vocational counselors and should undergo a more updated physical capacities exam and attempt to return to the workforce with restrictions, probably in a light duty capacity.

Tr. 336.  The ALJ, not only found Mr. Ouch cannot perform his past work, he went one better than Dr. Schuster—he found Mr. Ouch was limited to lifting 10 pounds and was limited to sedentary work.

Second, Mr. Ouch argued Dr. Jones confirmed Dr. Schuster's opinion and further opined that Mr. Ouch's "neck's [sic] should not be out of neutral position for prolonged periods." Tr. 305.  As with Dr. Schuster's opinions, the Court does not find Dr. Jones' opinions undermine the ALJ's step-five determination that Mr. Ouch can perform work.

The L&I records show Mr. Ouch received occupational therapy.  Dr. Jones' received an occupational therapy report indicating "[Mr. Ouch's] previous employer offered him a light duty position however he chose not to accept it.  He has met all of his return to work goals with the exception of waist to eye level lifting." Tr. 351.

A month later, Dr. Jones noted "the patient continues to complain of cervical pain when he does any kind of difficult labor."[6]  Tr. 345.  "He was again advised that he should take the modified duty job he had been offered.  I am going to place a 25 pound permanent weightlifting restriction and I will advise L&I." *Id.*  Dr. Jones also noted that "a job analysis for modified duty

---

[6] On a different occasion, Dr. Jones repeated this stating "[Mr. Ouch] continues to complain of neck pain . . . whenever he does any kind of strenuous activity." Tr. 346.

REPORT AND RECOMMENDATION- 7

was received from the company and it was reviewed, completed and approved for modified duty. Modified duty is clerical work." Tr. 348.  Dr. Jones' further noted "I encouraged him to look for a job.  His only limitations now are some heavy lifting and work in awkward positions." Tr. 350.  In short, Dr. Jones' opinions are consistent with the ALJ's finding that Mr. Ouch cannot perform his past work, but can perform sedentary work.

Having reviewed the new evidence presented to the appeals council, the Court finds the opinions of Dr. Shuster and Dr. Jones do not undermine the ALJ's step-five determination.  Accordingly, the Court will not disturb the ALJ's finding.

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 16th day of February, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 8